IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-02183-SKC

S.K.Q.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## OPINION & ORDER

This action is before the Court under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff S.K.Q.'s[1] applications for disability insurance benefits (DIB) and supplemental security income (SSI). The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. For the following reasons, the Court REVERSES and REMANDS the Commissioner's final decision for additional proceedings.

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

## BACKGROUND

This action arises from Plaintiff's applications for DIB and SSI under the Social Security Act claiming she became disabled beginning June 1, 2019. After two delays wherein the hearing was commenced and then suspended, Plaintiff appeared and testified at a telephonic administrative law hearing on January 27, 2022, before Administrative Law Judge Kathryn D. Burgchardt (ALJ). Rebecca Sharp, a non-attorney representative, represented Plaintiff at the hearing.

The ALJ issued her written decision on February 23, 2022. Dkt. 7-2.[2] She determined Plaintiff had not been under a disability from the June 1, 2019, onset date through the date of her decision. Plaintiff then requested review by the Appeals Council, which denied her request, and in doing so, the ALJ's decision became the final decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff timely filed this action. The Court has jurisdiction to review the final decision under 42 U.S.C. § 405(g).

---

[2] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 7.

## DIB/SSI FRAMEWORK[3]

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

---

[3] Throughout this Opinion, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (which contain the Commissioner's regulations relating to disability insurance benefits), identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

3

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at Step Three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.*

§ 416.920(e). The claimant has the burden of proof in Steps One through Four. The Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ's Decision tracks the five-step process. At Step One, she found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR: 17. At Step Two, she found Plaintiff has the following severe, medically determinable impairments: Degenerative Disc Disease of the Cervical Spine, and Disorder of the Right Upper Extremity. *Id.* at 18. She further concluded Plaintiff's medically determinable impairments of depression, anxiety, and post-traumatic stress disorder were non-severe. *Id.* At Step Three, she found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. She then found Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only frequently handle and finger with the right, dominant upper extremity; can only occasionally crawl and climb ladders, ropes and scaffolds. She can only lift or carry up to 10 pounds frequently and 20 pounds occasionally. She could stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday. She could sit with normal breaks for a total of 6 hours in an 8-hour workday. She can perform pushing and pulling motions with upper and lower extremities within the weight restrictions given.

*Id.*

At Step Four, the ALJ determined Plaintiff could perform her past relevant work as a lender, mortgage officer, and account executive. *Id.* at 24. Accordingly, the

ALJ did not proceed to Step Five and determined Plaintiff was not disabled during the relevant period.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotations and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must "meticulously examine the record as a whole,

6

including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff raises two issues: (1) "[t]he ALJ did not properly assess plaintiff's mental impairments;" and (2) "[t]he ALJ did not properly assess the plaintiff's allegations." Dkt. 9. Because the first argument is sufficient on its own to warrant reversal, the Court declines to address the second argument. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").

### A.   State Agency Medical Consultants

Pertinent here, "RFC assessments by State agency medical. . . consultants. . . are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." Social Security Ruling 96-6p, 1996 WL 374180, at *4 (July 2, 1996). These consultants are considered "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i). The ALJ must explain the weight given to the consultant in her written decision. *Id*. §§ 404.1527(e)(2)(H). "In

7

evaluating RFC assessments prepared by state consultants, the ALJ follows the same process that applies to any opinion evidence, considering factors such as 'the supporting evidence in the case record.'" *Brown v. Colvin*, No. 4:12-CV-00247-FL, 2014 WL 1282255, at *15 (E.D.N.C. Mar. 27, 2014) (quoting 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d)).

### B.     Dr. David Benson, Ph.D.

Dr. Benson is a state agency consultant who performed a detailed mental status examination on Plaintiff. AR: 1192-1200. He diagnosed her with unspecified anxiety disorder, persistent depressive disorder, and post-traumatic stress disorder. *Id.* at 1199. In addition, Dr. Benson concluded Plaintiff had moderate limitations in her ability to understand, remember, and carry out complex instructions. *Id.* He also concluded Plaintiff had moderate impairments in her ability to respond appropriately to usual work situations and the changes in routine work setting. *Id.*

In her decision, the ALJ did not find Dr. Benson's opinion to be persuasive. *Id.* at p.23. Although she noted Dr. Benson's opinion was well supported with references to objective findings from his examination, she concluded his opinion was not consistent with Plaintiff's minimal treatment, her reported activities and abilities, or past exams that noted Plaintiff was cooperative, had a good mood and affect and exhibited normal judgment and insight. *Id.* Plaintiff argues the ALJ's conclusions in this regard are not supported by substantial evidence. The Court agrees.

8

The question is whether substantial evidence supports the ALJ's rejection of Dr. Benson's opinions regarding Plaintiff's moderate mental impairment limitations. An ALJ is barred from making inferences from medical reports and may only reject an opinion if there is medical evidence to the contrary. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in the...ability to perform physical demands ... [and] mental demands of work activities[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under the regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)...including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, "the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as 'a medical source's familiarity with the other evidence in a claim.'" *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *2 (10th Cir. Dec. 23, 2022) (citing *Id.* §§ 404.1520c(c), 416.920c(c)).

With respect to the ALJ's conclusion that Dr. Benson's findings were not consistent with Plaintiff's reported activities and abilities, the Court notes the ALJ offered no explanation as to which activities or abilities she was relying on. AR: 23. But perhaps more importantly, to the extent the ALJ relies on her own assessment

9

of Plaintiff's function report and Plaintiff's hearing testimony, the Court finds the ALJ's analysis to be lacking. First, Plaintiff's function report is far more nuanced than the ALJ's analysis suggests. *See Wells v. Colvin*, 727 F.3d 1061, 1070 (10th Cir. 2013). For example, although the ALJ stated Plaintiff could "shop in stores, go out to dinner and movies with friends, take community classes," "prepare meals, dust, wash dishes, shop, drive, [and] handle finances" (AR: 19), the function report supports far more limited activities. To be sure, Plaintiff reported she could no longer "walk with ease, run, work, entertain guests, hike, sit through a movie, drive/ride long distances," or complete general hygiene tasks. *Id.* at 412. The ALJ's analysis fails to account for or discuss Plaintiff's more limited descriptions of her daily activities.

Second, the ALJ's mischaracterization of Plaintiff's function report was compounded at the hearing. While the ALJ relied on Plaintiff's testimony regarding her activities and abilities, that testimony was the result of the ALJ's cross-examination of Plaintiff, rather than the ALJ's development of Plaintiff's record testimony with open-ended questions. The ALJ simply read Plaintiff a list of things Plaintiff mentioned she enjoyed doing and then she asked Plaintiff to confirm the point without engaging in any questions regarding her present ability to participate in those activities.[4] *Id.* at pp.55-56. Under these circumstances, the ALJ's reliance on

---

[4] Plaintiff's representative allowed Plaintiff to explain her activities with more detail, but much like Plaintiff's function report, the ALJ did not acknowledge this testimony. AR: 58-59.

this testimony as the basis for concluding Plaintiff was capable of doing more than she claimed is disingenuous and does not constitute substantial evidence.[5]

In addition, the Court agrees with Plaintiff that the ALJ erred when she failed to address the medical evidence that was contrary to her conclusion. "Although an ALJ is entitled to resolve conflicts in the record . . . she may not pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence, . . . or mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (cleaned up). Here, the ALJ cited several medical records that note Plaintiff had a normal mood and affect, but she does not address other medical records tending to support Dr. Benson's conclusions. And, as Plaintiff points out, these notations are cursory and were made incidental to exams regarding physical ailments and, in at least one

---

[5] The Court is also concerned with the ALJ's apparent disregard for whether Plaintiff would be permitted to testify regarding her abilities. When Plaintiff's representative raised concern over Plaintiff being allowed to testify, the ALJ was dismissive and stated that Plaintiff had been given enough time to testify during the prior hearings, despite the fact those two hearings lasted no more one hour combined. AR: 50-51, 64-97. The Court also notes that during the second hearing, when Plaintiff's representative informed the ALJ that documents were missing from the record (albeit because they were submitted two days late), the ALJ's response was "That's just too bad. That's just too bad at this point." *Id.* at 81. The Court understands tone is difficult to discern from a transcript, but these incidents are noteworthy and give the Court pause about the potential short shrift the ALJ afforded Plaintiff's testimony. Finally, the Court is also concerned with the ALJ's mischaracterization of Plaintiff's medical records as stating she had "good mood and affect," when the notes state "*normal* mood and affect." The use of the word "good" may suggest Plaintiff had a more euphoric mood than observed. These words are not interchangeable, and accuracy is important.

11

instance, the ALJ relied on the same encounter twice as support for her conclusions. Compare AR: 687 with AR: 1093 (duplicate records from June 25, 2019).

The Court cannot conclude the foregoing errors are harmless. "To deem an error harmless in the social-security context, the court must be able to say with confidence that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Jones v. Berryhill*, 720 Fed. Appx. 457, 459 (10th Cir. 2017) (internal citations omitted). Because the ALJ mischaracterized Plaintiff's activities and abilities, did not consider the opposing medical evidence in assessing Dr. Benson's opinions, and cited several medical records more than once, the Court concludes a reasonable administrative factfinder applying the correct analysis could have resolved these issues in Plaintiff's favor. Further, the ALJ did not include any mental limitations in the RFC or in her hypotheticals to the VE. Had she done so, it may have altered the VE's assessment of the jobs Plaintiff was or was not capable of performing.

*   *   *

For the reasons shared above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion. Plaintiff is awarded her costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1).

In addition, given the ALJ's expressed frustrations and impatience with Plaintiff and her representative, the Court RECOMMENDS this matter be redrawn

to a new ALJ on remand. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir.1996) ("If there is sufficient evidence of bias to entitle the claimant to review by a different administrative law judge, ... then the transfer of the case to a different administrative law judge is an automatic consequence of reversal. But we do not think that that point was reached here, and we therefore do not order, but merely recommend, that the case be transferred.").

DATED: March 27, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge